```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

TIMOTHY THOMAS,

                                      Plaintiff,

      -vs-                            **No. 6:13-CV-6371(MAT)**
                                                          **DECISION AND ORDER**
DIANE TOPOREK, ROSALYN KILLINGER,
and CARL J. KOENIGSMANN, M.D.,

                                      Defendants.
___

**I.   Introduction**

Pro se plaintiff Timothy Thomas ("Plaintiff"), an inmate in custody of the New York State Department of Corrections and Community ("DOCCS") at Wende Correctional Facility ("Wende"), instituted this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that he was denied adequate medical care in violation of his Eighth Amendment rights.

**II.   Factual Background and Procedural History**

Plaintiff is an inmate in DOCCS' and was housed at Wende during all times relevant to this Complaint. Diane Toporek ("Toporek") is a Nurse Administrator with DOCCS; Rosalyn Killinger ("Killinger") is the DOCCS' Deputy Superintendent of Health Services; and Carl J. Koenigsmann, M.D. ("Dr. Koenigsmann") is the Deputy Commissioner/Chief Medical Officer of DOCCS.

The following factual summary is gleaned from Plaintiff's Complaint (Dkt #1). In June of 2012, Plaintiff complained of eye

problems to officials at Wende. It seems that he had broken his prescription glasses by sitting on them, and he was having difficulty reading without them. In July of 2012, Plaintiff saw an "eye doctor" but "[his] glasses couldn't be repaired because [he] didn't have them anymore." SOF, ¶ 4.[1] The eye doctor wrote in Plaintiff's chart that he "'need[ed] to see [sic] eye exam'" but that he was not "due until 1/20/2013" for such an exam. Id. Plaintiff states that at his last sick call-out regarding his eye issues, the eye doctor did not "fix the problem" and "kept [him] with the same prescription" that he had received on June 9, 2010. Id. Plaintiff asserts that he "should not be punished" for the 2011 call-out because the doctor "was examining [his] eye's [sic] to see if he gave [him] the wrong prescription in [his] glasses." Id.

Plaintiff then filed a grievance on July 16, 2012, requesting to see an eye doctor because he was "having pain and stress on the eyes". SOF, ¶ 3. He states that he was told that he would not be able to see the eye doctor until January 2013. Id. However, Plaintiff does not appear to have attached the response to this grievance to his Complaint.

Plaintiff indicates that he went to see the "eye doctor" on July 26, 2012, but states, cryptically, that his "glasses couldn't be repaired because [he] didn't have them anymore." SOF, ¶ 4. The

---

[1] References to "SOF" refer to the Statement of Facts annexed to the form Complaint. All of the documents referenced in this Decision and Order are attached to the Complaint but are unpaginated.

"eye doctor" indicated that he needed to have a new eye exam. <u>Id.</u> Plaintiff filed a second grievance on July 30, 2012. <u>Id.</u>, ¶ 5.

On August 6, 2012, and August 9, 2012, Plaintiff went to sick call "complaining about eye strain", "pain", and "discomfort in trying to see things." SOF, ¶ 6. Apparently, Plaintiff was told by the medical staff during his sick call visits that he was scheduled to the see the eye doctor in January 2013. Dissatisfied with having to wait that long, Plaintiff submitted two grievances and also wrote a letter complaining to the nurse administrator.

On August 14, 2012, Plaintiff saw "care provider Ms. Wrest" regarding his asthma. Plaintiff explained to Ms. Wrest the "pain and discomfort" he was experiencing with regard to his eyes, and she agreed that waiting until January 2013 to see an eye specialist was too long. Accordingly, she "pulled out a contract to have [him] sign" so that he could see an eye specialist at an earlier date. SOF, ¶ 8.

Plaintiff still did not get on the schedule to see an eye specialist, so he wrote a letter to the Deputy Superintendent of Health Services on September 2, 2012, setting forth the problems he was having with his eyes. He also mentioned the contract that he had signed in front of Ms. Wrest. SOF, ¶ 9. Acting Nurse Administrator T. Walsh responded to his letter on September 12, 2012, reminding him that he saw the medical provider on August 14, 2012, at which time she scheduled him for an eye exam next month,

i.e., October of 2012. Walsh noted that the optometrist only comes in once a month.

On September 27, 2012, Plaintiff received a decision on his Superintendent's Appeal of his grievances filed in July 2012. The grievance appeal was "granted to the extent" that

> [p]er investigation, it has been reported that the grievant requested to see an eye doctor. Grievant is scheduled to see the optometrist in October. The optometrist is scheduled for one visit per month and sees approximately 40 inmates. Due to no optometrist available, the clinic fell behind in scheduling but will be caught up by next month.

On October 2, 2012, Plaintiff signed the Superintendent Appeal form, indicating that he was appealing the matter to the Central Office Review Committee ("CORC") "because the fact of the matter is that [he] was denied medical treatment to see an eye doctor from June to October 2012."

Plaintiff then wrote a letter to the DOCCS Chief Medical Officer explaining that prison medical staff would not help him with the pain and suffering he was experiencing. Regional Health Service Administrator Eileen R. Dinisio ("Dinisio") responded to his letter on October 11, 2012, noting that he had been evaluated by his primary care physician and seen by optical services in July 2012, and that he had an appointment scheduled in the near future to be seen in the optometry clinic for an eye exam. Dinisio suggested that until he was able to have an eye exam, Plaintiff continue to go to sick call-out if he had problems.

Also on October 11, 2012, Plaintiff "finally got [his] eyes examine[d]." SOF, ¶ 11. On December 26, 2012, he received his new glasses. However, when they were fitted, the optometrist "bent the glasses to [sic] much, so a few days later the glasses started hurting [his] ears." Id. Plaintiff complained, and was placed on a call-out to have his glasses adjusted on January 16, 2013. At that time, however, the optometrist was unable to re-adjust the glasses, so he ordered Plaintiff another pair.

On February 13, 2013, Plaintiff received a decision from the CORC stating that his request was "unanimously accepted in part", that is, it was accepted "only to the extent that CORC upholds the determination of the Superintendent for the reasons stated" in the September 27, 2012 decision. The CORC noted that Plaintiff had been seen by optical services on July 26, 2012; November 21, 2012; December 26, 2012; and January 16, 2013; and had been seen by the optometrist on October 11, 2012. In addition, he received his new eyeglasses on December 26, 2012; and had them adjusted on January 23, 2013. Finally, the CORC noted that Plaintiff had an upcoming follow-up appointment with optical services.

Plaintiff then filed the instant suit on July 15, 2013, alleging the denial of adequate medical care with regard to his eye issues. His first claim is asserted against Toporek and covers the time-period from June 20, 2012, to August 9, 2012. His second claim is asserted against Killinger; the only date identified is

September 2, 2012. Finally, his third claim is asserted against Dr. Koenigsmann; again, the only date indicated is September 2, 2012. The gist of all of his claims is that he wrote letters to Defendants in August and September seeking an immediate appointment with an optometrist, and complaining that he was unable to be scheduled to see an optometrist until October.

Defendants have filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a memorandum of law in opposition to the motion.

For the reasons that follow, Defendants' Motion to Dismiss is granted, and the Complaint is dismissed.

**III. Defendants' Motion to Dismiss**

**A.   Legal Standard Applicable to Rule 12(b)(6) Motions**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded

factual allegations contained in the complaint, Iqbal, 129 S. Ct. at 1950, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). Where, as here, the plaintiff is proceeding pro se, his complaint and supporting papers must be read "liberally" and interpreted to "raise the strongest arguments that they suggest." Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949-50.

**B.    The Eighth Amendment and Prison Medical Care**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Tramell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (citation omitted). "Punishment" encompasses deprivations imposed incident to imprisonment. Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). Additionally, the Eighth Amendment dictates that prisoners are entitled to adequate medical care. See id. at 104 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain[ ]' proscribed by the Eighth Amendment.") (internal quotation omitted).

To state an Eighth Amendment claim for denial of adequate

medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference" to his "serious medical needs." Estelle, 429 U.S. at 104. Such a claim thus contains two elements: (1) the plaintiff must have a serious medical condition, and (2) the prison officials must have acted with deliberate indifference in regard to that condition. Farmer v. Brennan, 511 U.S. 825, 834-35 (1994); see also, e.g., Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong of the test considers, from an objective standpoint, whether the medical condition presents "a condition of urgency that may result in degeneration or extreme pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Relevant factors include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." Id. (quotation omitted; alteration in Chance).

The second prong asks whether the defendants, subjectively speaking, acted with the requisite culpable mental state, something akin to criminal recklessness. Wilson v. Seiter, 501 U.S. 294, 301-03 (1991); see also Hathaway, 37 F.3d at 66. "Deliberate indifference" requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of

causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Significantly, simple medical malpractice is insufficient to support an Eighth Amendment claim, unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Chance, 143 F.3d at 702 (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996); citation omitted in Chance)).

### C. Analysis

As noted above, Plaintiff asserts that he suffered eye strain and migraines from not having the proper strength prescription glasses for a period of time, and that he allegedly almost went "legally blind". The Court assumes, arguendo, that Plaintiff has adequately alleged a serious medical condition for purposes of an Eighth Amendment claim. See Koehl v. Dalshseim, 85 F.3d 86, 88 (2d Cir. 1996) (the prisoner's alleged medical need for prescribed eyeglasses to avoid double vision and loss of depth perception was sufficiently serious to support his claim that prison officials' deprivation of his glasses violated Eighth Amendment; "[s]uch visual deficiencies can readily cause a person to fall or walk into objects, and [the prisoner] alleged that he has experienced such occurrences, and has suffered injuries as a consequence") (citing Gamble, 429 U.S. at 103).

Turning to the second prong of the test, the Court notes that

in a case such as this one in which the prisoner has actually received medical treatment, deliberate indifference will not be found unless "'the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all.'" Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (quoting Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir. 1970)). The allegations in Plaintiff's Complaint and the documents annexed thereto plainly are insufficient to state a plausible claim that Defendants acted with "a state of mind that is the equivalent of criminal recklessness." Hathaway v. Coughlin, 99 F.3d at 553. Instead, they show that Defendants were as responsive as they could be to Plaintiff's requests for treatment given the limited visits the optometrist made to the facility (only one per month); the large number of inmates who needed to be seen when the optometrist visited (approximately 40 patients); and the fact that the optometrist was unable to visit for one of the months at issue. As the Wende officials explained, they had fallen behind on scheduling optometry appointments as a result of the optometrist's lack of availability, but had gotten caught up within about a month. Thus, the delay in having Plaintiff see the optometrist was not due to Defendants' conscious disregard of a substantial risk to his Plaintiff's health, or a wilful desire to prevent Plaintiff from receiving the medical care he requested. Moreover, as Plaintiff concedes, Defendants accommodated Plaintiff's request to be seen sooner, and

his scheduled appointment was moved up from January 2013, to October 2012.

At the very most, Plaintiff's Complaint alleges negligence in arranging to have a substitute or additional optometrist visit Wende to deal with the backlog, but as explained above, mere negligence does not amount to a constitutional violation. See, e.g., Daniels v. Williams, 474 U.S. 327, 328 (1986) (holding that a merely "negligent act of an official causing unintended loss of or injury to life, liberty, or property" does not constitute a constitutional claim); Chance, 143 F.3d at 703 (stating that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim"). Accordingly, the Court finds that Plaintiff has failed to come forward with sufficient factual matter, accepted as true, to state a claim to relief under the Eighth Amendment that is plausible on its face.

**V.   Conclusion**

For all the foregoing reasons, Defendant's Motion to Dismiss is granted; and the Complaint is dismissed in its entirety with prejudice as to all Defendants. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

          **S/Michael A. Telesca**

```
                              _____
                              HONORABLE MICHAEL A. TELESCA
                              United States District Judge
```

DATED:    March 6, 2014
          Rochester, New York